UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO.: 05-30151-MAP

KATHY O'MALLEY,　　　　　　　　　　　 )
　　　Plaintiff　　　　　　　　　　　　　　　 )
　　　　　　　　　　　　　　　　　　　　　　 )
vs.　　　　　　　　　　　　　　　　　　　　 )
　　　　　　　　　　　　　　　　　　　　　　 )
TOWN OF EGREMONT, CHARLES OGDEN,　　 )
HARRY MEYER, AND DONALD GLEASON,　　 )
　　　Defendants　　　　　　　　　　　　　　 )

**DEFENDANTS' MEMORANDUM OF LAW IN
SUPPORT OF ITS MOTION TO DISMISS**

**STATEMENT OF FACTS**

Solely for the purposes of the instant motion, the defendants accept as true the facts, as

opposed to the conclusory allegations as contained in the Plaintiff's Complaint as true.

**STANDARD OF REVIEW**

In considering a motion to dismiss, a Court must take well-pled factual allegations in the

complaint as true and must make all reasonable inferences in favor of the plaintiff.  See

*Watterson v. Page,* 987 F.2d 1, 3 (1st Cir. 1993).  The Court, however, need not credit "bald

assertions, unsupportable conclusions, and opprobrious epithets."  See *Chongris v. Board of

Appeals,* 811 F.2d 36, 37 (1st Cir. 1987).

**ARGUMENT**

A.　　**The Statute Of Limitations Precludes The Imposition Of Liability As To Most, If
Not All, Of The Counts Of The Plaintiff's Complaint.**

The Plaintiff's Complaint alleges that the defendant, Harry Meyer (hereinafter "Meyer"),

committed various wrongful acts on March 2, March 9, and March 10, 2002.  See Plaintiff's

Complaint, ¶¶ 10, 11, 13-16.  The Docket Sheet from the Berkshire County Superior Court

406490

where this action was originally filed reflects that suit was filed on March 11, 2005. A copy of the Docket Sheet is attached hereto and marked as Exhibit A.[1]

Count I of the Plaintiff's Complaint alleges a violation of Part 1, Article IX of the Massachusetts Declaration of Rights specifically referring to actions which occurred at the transfer station on March 2, March 9, or March 10, 2002. See Plaintiff's Complaint, ¶ 32.

Count II of the complaint alleges violation of M.G.L. c. 12, §§11 I and 11H but provides no reference to the factual support underlying that claim.

Count III alleges violation of Article XLVIII of the Massachusetts Declaration of Rights again absent specific reference to factual support therefor but referencing the plaintiff's rights with respect to the referendum petitions for which she sought signatures on the dates as set forth above.

Count IV alleges violation of the Fourteenth Amendment, Entitlement to Due Process. The only factual reference, again, is to the activities at the transfer station which allegedly occurred on the dates as set forth above.

Count V alleges civil assault and specifically references the conduct of the defendant, Meyer, which occurred on March 10, 2002. See Plaintiff's Complaint, ¶¶ 15-16.

Count VI alleges violation of "S. 1983." Again, the only dates referenced in the count are those set forth above.

Count VII alleges violation of the plaintiff's First Amendment Right to Free Speech. Again, factual support for the allegation is absent other than reference to the previous paragraphs.

---

[1] The defendants recognize that attaching documents to this Memorandum renders the motion susceptible to conversion to one pursuant to Fed. R. Civ. P. 56. The defendants suggest that such conversion is not necessary as the Court is entitled to take judicial notice of the docket entry of a state court.

406490

Count VII alleges "Supervisory Liability" but again fails to reference factual support for the allegation.

Count IX alleges a violation of M.G.L. c. 258 and, quite frankly, is incomprehensible.

1.      **As To The Federal Actions.**

It is undisputed that a claim brought pursuant to 42 U.S.C. § 1983 borrows the state law statute of limitations unless contrary to federal law. *Wilson v. Garcia,* 471 U.S. 261, 267 (1984). The Massachusetts state statute governing personal injury claims is set forth in M.G.L. c. 260, § 2A requiring that such actions be commenced "within three years next after the cause of action accrues." Inasmuch as this case is pending in the Federal Court, federal law controls the determination as to when the cause of action accrues. *Guzman-Rivera v. Rivera-Cruz,* 29 F.3d 3, 5 (1st Cir. 1994). Federal and Massachusetts law are consistent in that a 1983 claim accrues when a plaintiff knows or has reason to know of the injury allegedly suffered. See *Nieves v. McSweeney,* 241 F.3d 46, 52 (1st Cir. 2001); *Reilly v. Presnell,* 409 Mass. 239, 243 (1991). "The knowledge required is not notice of every fact which must eventually be proved in support of a claim, but rather knowledge that an injury has occurred." *Tedeschi v. Reardon,* 5 F. Supp. 2d 40, 44 (D. Mass. 1998), *quoting, Pagliuca v. Boston,* 35 Mass. App. Ct. 820, 824 (1994). Therefore, the key question to be answered is at what point did the plaintiff reliably know or have reason to know of the injury which he claims in this action. See *Tedeschi v. Reardon,* 5 F. Supp. 2d at 44.

The First Circuit has confirmed that the last day for filing suit is "the anniversary date of the event, in accordance with Mass. R. Civ. P. 6(a)." *Poy v. Boutselis,* 352 F.3d 479, 483 (2003). The Plaintiff's Complaint quite clearly alleges specific dates upon which the wrongdoing pursuant to which her claims exist occurred. All three specified dates occurred more than three years prior to the date upon which the complaint was filed. It is, thus, undisputed that the suit in the above-captioned matter was filed one day after the anniversary date of the last date of the

4

alleged wrongdoing at the town transfer station, that being March 10, 2002. Minimally, then, any claims relating to the specific actions which occurred at the transfer station on March 2, March 9, or March 10, 2002, must be dismissed as such claims run afoul of the statute of limitations. The defendants submit that all of the counts are subject to dismissal under the argument as set forth above. Again, however, it is clear that Counts V through VII and Count IX are subject to dismissal outright.

   2.    **As To The State Actions.**

The foregoing arguments apply with equal force to the state law claims which are also subject to a three year statute of limitations. See, M.G.L. c. 260, § 2A; M.G.L. c. 258.

**B.    As To Substantive Allegations.**

The plaintiff, in her complaint, also purports to allege additional misconduct on the part of the defendants. Although it is difficult to comprehend, the complaint appears to allege that the plaintiff was dissatisfied with the investigation undertaken by the Select Board in connection with her complaints regarding the defendant, Meyer. She alleges that these events occurred between March 14, 2002 and April 18, 2002.

Additionally, the plaintiff alleges that "in a **seemingly** related matter", the plaintiff was advised of a zoning violation by the Town Building Inspector, who is not a defendant in this case, over a year after the alleged wrongdoing at the transfer station. (Emphasis supplied). The complaint contains no facts whatsoever which suggest involvement by any defendant herein in the decision to issue the Notice of Violation on or about June 19, 2003.

The defendants cannot discern, from the rambling statements in the Plaintiff's Complaint which counts she alleges relate to the action which purportedly occurred after March 10, 2002 with the limited exception of those identified hereinabove. Assuming, however, that the plaintiff's allegation survive the statute of limitations argument as set forth above, the defendants

406490

submit that the allegations fail to set forth a cause of action cognizable under either federal or state law.

1.      **The Plaintiff's Dissatisfaction With The Employment Action Taken By The Defendants With Regard To The Defendant, Meyer, Simply Does Not Present A Cause Of Action.**

The plaintiff does not set forth any facts to suggest that she suffered any specific damages as the result of the employment action allegedly taken by the defendants.  Nor does the plaintiff cite any law, state or federal, which allows an individual to mandate the employment action to be taken with regard to a municipal employee after allegations of wrongdoing have been made against them.  If the plaintiff articulated specific facts indicating that additional wrongdoing was allowed to occur due specifically to the failure of the defendants to take appropriate action, it is conceivable that a cause of action could be articulated.  No such claim, however, is made here.

2.      **The Complaint Is Devoid Of Factual Or Legal Support For A Claim Relating To A Referendum Petition.**

Read most liberally, the Plaintiff's Complaint alleges that the defendant Select Board members failed and/or refused to extend a statutory period so as to allow her to obtain signatures. The plaintiff's conclusory allegations that such actions were in retaliation for her complaints are factually unsupported.

At the outset, it must be noted, that the complaint itself does not specifically allege that the Board denied an extension as requested.  See Plaintiff's Complaint, ¶ 19.  Moreover, according to the complaint, the plaintiff followed "the requisite procedures for procuring a [sic] initiative and referendum petition under the principles set forth in M.G.L.A. c. 53, s. 22A, and/or M.G.L.A. c. 43, s. 38-39, and set out to obtain the necessary number of signatures to place the petition or measure before the voters of the Town." See Complaint, ¶ 7.  In ¶ 19, the plaintiff further alleges that she attended a Select Board meeting and asked "for a continuance of the

6

statutory signature gathering deadline given the fact that she was prevented by public official from lawfully collecting signatures…" See Complaint, ¶ 19. The plaintiff states that the failure to allow the continuance denied her a right secured by the Constitution. *Id.*

The plaintiff has failed to state a claim for several reasons. First, the statutory provisions to which the plaintiff refers in her complaint are inapplicable to the process of procuring a ballot initiative in the Town. M.G.L. c. 53, § 22A governs specifically state initiatives and referenda. None of the time frames provided therein, therefore, relate to the initiative for which the plaintiff was attempting to collect signatures, a purely municipal matter. See Complaint, ¶ 6. Even assuming the applicability of M.G.L. c. 53, § 22A, the provisions therein relating to the timeframe are mandatory and not discretionary.

Further, §§ 38 and 39 of M.G.L. c. 43 are applicable only to those cities and towns which have adopted a city charter. *See generally, Chopelas v. City Clerk of Malden,* 1 Mass. App. Ct. 241 (1973); *Lafleur v. City of Chicopee,* 352 Mass. 746 (1967); 345 Mass. 175 (1962). The plaintiff does not allege that the Town has adopted a city charter nor has she made any other allegations that would bring her complaint under the purview of c. 43, §§ 37-38. Insofar as none of the provisions alleged in the complaint are applicable in the instant action, it is, as a matter of law and of logic, impossible for the Select Board to have acted in violation of such provisions thereby resulting in a violation of the plaintiff's constitutional rights. Notably, the complaint does not allege the authority under which any of these provisions would have allowed the Town to have so acted.

Yet another reason plaintiff's allegation fails is that even if the plaintiff had referenced the appropriate section regarding citizen initiatives with respect to the Town, any time frames set forth in that statute are mandatory and not subject to the discretion of the Select Board. See

M.G.L. c. 53, § 18A. To suggest that the Town had the power to override the mandate of a state general law is simply untenable as a matter of law.

For these reasons, the Town submits that the allegation the Select Board violated a constitutional right of the plaintiff's when they failed to allow her more time to continue gathering signatures cannot, on the facts as alleged, withstand a motion to dismiss as the plaintiff has failed to state a claim upon which relief may be granted.

3.     **The Complaint Is Devoid Of Facts Purporting To Causally Relate The Actions Of The Town Building Inspector To Any Defendant Herein.**

Nor does the complaint contain any factual support for the allegation that the issuance of the Notice of Violation of the zoning by-law by the Town Building Inspector who is not a defendant herein, in excess of a year after the alleged wrongdoing of the defendants bear any relation thereto. As such, allegations relating thereto cannot support a cause of action.

4.     **As To Counts I And II.**

To the extent that the Plaintiff's Complaint purports to allege independent causes of action under either the United States and/or State Constitutions, the same must fail. With regard to the United States Constitution, the plaintiff has simply failed to articulate a cause of action which would not otherwise be cognizable under 42 U.S.C. § 1983 and/or one contemplated under *Bivens v. Six Unknown Named Fed. Narcotics Agents,* 403 U.S. 388 (1971).

Nor has the plaintiff articulated facts under which any claim, assuming one exists, could be made for violation of the State Constitution and/or Commonwealth Declaration of Rights separate and distinct from one to be made pursuant to M.G.L. c. 12, § 11I. There is not a single case in the Commonwealth which has allowed a separate cause of action under the State Constitution and/or Commonwealth Declaration of Rights, particularly where a statutory cause of action has been fashioned. See, e.g., *Martino v. Hogan,* 37 Mass. App. Ct. 710 (1994). Even

406490

assuming the Court were to imply a private right of action, the facts, as alleged by the plaintiff, do not fall within the purview of either the State Constitution and/or Declaration of Rights.

**5.    As To The Town of Egremont.**

As to the claims under 42 U.S.C. § 1983, it is undisputed that a municipality cannot be liable on a theory of *respondeat superior*, but, rather, may only be liable upon allegations and proof of impermissible policy or custom. *Monell v. Dept. of Social Services,* 436 U.S. 658, 690-695 (1978).   The defendant municipality submits that the complaint does not allege facts sufficient to find allegations of policy or custom in violation of the law.   In the absence of any evidence of an unconstitutional municipal policy or custom, a single incident of misconduct cannot provide the basis for municipal liability under § 1983.   See *Monell v. Dept. of Social Services,* 436 U.S. 658, 690-695 (1978); *Baron v. Hickey*, 242 F. Supp. 2d 66, 75-76 (D. Mass. 2003).

Based upon the foregoing, to the extent that the complaint purports to allege constitutional violations against the municipality, the same must be dismissed.

Nor is there any law in the Commonwealth or in this Circuit which authorizes a claim pursuant to M.G.L. c. 12, § 11I against a municipality and, as such, to the extent that such claims are deemed to be alleged, they must be dismissed.

**6.    As To Count VIII (*Respondeat Superior*).**

As noted above, *respondeat superior* cannot serve as a basis for liability under § 1983. See *Board of County Comm'rs. of Bryan County v. Brown,* 520 U.S. 397, 403 (1997) (and cases cited therein).   Instead, for supervisors to be held accountable for their subordinates' alleged misdeeds, the Courts require a showing that the supervisor was either a primary actor involved in or a prime mover behind the underlying violation.   To meet this burden, the plaintiff must show some affirmative act or some conduct that amounts to implicit authorization on the part of the

supervisor with respect to his employee's behavior.  See, *Aponte Matos v. Toledo Davila,* 135 F.3d 182, 192 (1st Cir. 1998).

In the case of allegations of direct participation, the Court employs the classic *Harlow* qualified immunity framework discussed *infra* to determine whether or not the supervisors are entitled to qualified immunity as well.  See, *Camillo-Robles v. Zapata,* 175 F.3d 41, 43-44 (1st Cir. 1999).  Where a direct violation is not alleged, liability can exist when a supervisor supervises, trains or hires "with deliberate indifference toward the possibility that deficient performance of the task eventually may contribute to a civil rights deprivation." *Id.* at 44 (citations omitted).  In analyzing this potential liability, the Courts have generally looked to determine whether or not the supervisor's actions "displayed deliberate indifference toward the rights of third parties and had some causal connection to the subsequent tort." *Id.* (citations omitted).

Because the plaintiff fails to allege a single fact relevant to the behavior or conduct of the individual defendants which relates to supervision, there is nothing in the complaint from which this Court can discern a viable claim of supervisory liability against them.

7.    <u>**As to Count IV (Violation of Fourteenth Amendment Due Process Rights).**</u>

To survive summary judgment on a procedural due process claim, a plaintiff must provide evidence sufficient to establish four elements:  that the defendant(s) (1) acting under color of state law, (2) deprived the plaintiff of (3) an interest created and protected by state law (4) without satisfactory process.  See *PSZ Properties, Inc. v. Rodriguez,* 928 F.2d 28, 30 (1st Cir. 1991). As the term implies, "procedural due process" is simply "a guarantee of fair procedure." *Zinermon v. Burch,* 494 U.S. 113, 1 (1990).  See also *SFW Arecibolto v. Rodriguez,* 415 F.3d 135 (2005).  There is no set method by which the constitutional adequacy of state procedures is determined. Rather, "due process is flexible and calls for such procedural protections as the

particular situation demands." *Morrissey v. Brewer,* 408 U.S. 471, 481 (1972).  Courts therefore balance a number of factors, including the nature of the private and public interests involved; the risk of erroneous deprivation accruing under the procedures used by the state; and the probable benefit of demanding additional procedural safeguards.  See *Morrissey,* 408 U.S. at 481, 92 S. Ct. at 2600; see also *Memphis Light, Gas & Water Div. v. Craft,* 436 U.S. 1, 17-18, 98 (1978).  When a procedural due process claim is alleged, a court must evaluate the manner in which the state has acted: "how and when" the alleged deprivation was effected.  See *Barry v. Barchi,* 443 U.S. 55, 66, 99 S. Ct. 2642, 2650, 61 L.Ed.2d 365 (1979); see also *Zinermon,* 110 S. Ct. at 983.  Whether the deprivation was itself erroneous has no bearing on whether or not due process was afforded.  See *Carey v. Piphus,* 435 U.S. 247, 266 (1978).

Additionally, where there is a land use issue, a plaintiff must generally exhaust his administrative remedies before he alleges a procedural due process violation.  See *Creative Environments, Inc. v. Estabrook*, 680 F.2d 822 (1ˢᵗ Cir. 1982).  In *Creative Environments*, the plaintiff alleged that its due process was violated:

> by the Town's overall 'distortion of the existing statutory and regulatory scheme'. This argument rests not on any failure to have provided adequate procedures, but on the alleged arbitrary misapplication of state law resulting, plaintiffs assert, in denying them their 'right' to conduct a legitimate business and make a profit.

*Creative Environments, Inc. vs. Estabrook*, 680 F.2d at 831.

After assuming that the "town engaged in adversarial and even arbitrary tactics," the First Circuit rejected the foregoing claim, noting that, if such a claim were to be accepted:

> any hope of maintaining meaningful separation between federal and state jurisdiction in this and many other areas of law would be jettisoned.  Virtually every alleged legal or procedural error of a local planning authority or zoning board of appeal could be brought to a federal court on the theory that the erroneous application of state law amounted to a taking of property without due process.  Neither congress nor the courts have, to date indicated that section 1983 should have such a reach.

*Id.*

Further distinguishing the alleged wrongful acts of the defendants, the Court noted "even if it could here be shown that the Board Members strayed willfully from the 'proper ends of the governmental duties' their digression was not of 'constitutional portions'." *Id.* at 832, n.9 [citations omitted]. See also *Freeman v. Planning Bd. of West Boylston*, 419 Mass. 548 555-556 (1995). See also, *Chiplin Enterprises, Inc. v. City of Lebanon*, 712 F.2d at 1526-1529 (collecting relevant cases and stating that dismissal under Fed. R. Civ. P. 12(b)(6) proper in action by local planning Board alleging similar constitutional violations).

> Finally, the *Creative Environment* court noted that the claim was: "too typical of the run of the mill dispute between a developer and a town planning agency, regardless of [CEI's] characterizations of it and of the defendant's alleged mental states, to rise to the level of a due process violation. The authority cited by [CEI], as well as other cases, all suggest that the conventional planning dispute–at least when not tainted with fundamental procedural irregularity, racial animus, or the like – which takes place within the framework of an admittedly valid state subdivision scheme is a matter primarily of concern to the state and does not implicate the constitution. This would be true even were planning officials to clearly violate, much less 'distort' the state scheme under which they operate."

*Creative Environments, Inc. vs. Estabrook*, 680 F.2d at 831.

In contrast, a substantive due process claim implicates the "essence" of state action rather than its process. Therefore, analysis of such a claim rests not on whether there were procedural deficiencies, but on the idea that the government's conduct, regardless of the process provided, was itself impermissible. It has been held, for instance, that substantive due process protects individuals against state actions which are "arbitrary and capricious," *Newman v. Massachusetts,* 884 F.2d 19, 25 (1st Cir. 1989), or those which run counter to "the concept of ordered liberty," *Palko v. Connecticut,* 302 U.S. 319, 325, 58 S. Ct. 149, 152, 82 L.Ed. 288 (1937), or those which appear "shocking or violative of universal standards of decency," *Furtado v. Bishop,* 604 F.2d 80, 95 (1st Cir. 1979) (footnote omitted), *cert. denied,* 444 U.S. 1035, 100 S. Ct. 710, 62 L.Ed.2d

672 (1980).  See *Rochin v. California,* 342 U.S. 165, 172, 72 S. Ct. 205, 209, 96 L.Ed. 183 (1952) (in substantive terms, Due Process Clause condemns conduct "too close to the rack and the screw"); *cf. Tenoco Oil Co. v. Department of Consumer Affairs,* 876 F.2d 1013, 1020-24 (1st Cir. 1989) (discussing disfavored status of substantive due process claims).  Importantly, a plaintiff is not permitted to mix contested events with other factors to establish a substantive due process claim but rather must show that the state action in and of itself is "egregious, unacceptable, outrageous or conscious shocking." See *Amsden v. Moran,* 904 F.2d 748, 754 (1st Cir. 1990).

In the instant case, again, the allegations in the complaint are somewhat incomprehensible apparently mixing theories within the Counts.  It is clear, however, that there is no allegation in the complaint, factually supported, which would survive a Motion to Dismiss based upon the law as set forth above.

## 8.    As to Count VII (Violation of First Amendment Right to Free Speech).

The plaintiff simply cannot pursue a claim alleging a violation of the First Amendment without some procedural vehicle therefor.  She must, therefore, proceed under 42 U.S.C. § 1983.

Again, she has failed, entirely, to set forth facts to support a claim for the reasons set forth above.

## 9.    Qualified Immunity Precludes the Imposition of Liability As To The Individual Defendants.

Qualified immunity is intended to shield public officials in the course of performing discretionary acts "from civil damages liability as long as their actions could reasonably have been thought constant with the rights they are alleged to have violated." *Anderson v. Creighton,* 483 U.S. 635, 638 (1987).  The qualified immunity defense is favored early in the proceedings so

13

that costs and expenses of trial can be avoided where the defense is dispositive. See, *Saucier v. Katz,* 533 U.S. 194, 200 (2001).

Qualified immunity shields government officials from liability for civil damages when their actions "do not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982). "The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton,* 483 U.S. 635, 640 (1987). Qualified immunity provides protection to "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs,* 475 U.S. 335, 341 (1986). The relevant question, then, is "whether a reasonable official could have believed his actions were lawful in light of clearly established law and the information the official possessed at the time of his allegedly unlawful conduct." *McBride v. Taylor,* 924 F.2d 386, 389 (1st Cir. 1991). If no constitutional right is violated, a defendant is entitled to qualified immunity as a matter of law. *Saucier v. Katz,* 533, U.S. 194, 201 (2001).

Again, based upon the facts as alleged, it is the position of the individual defendants that qualified immunity clearly applies to preclude the imposition of liability.

**10.    As To Count II (M.G.L. c. 12, § 11I).**

It is the position of the defendants that to the extent that state civil rights claims are found to be asserted against the individual defendants, the same must also be dismissed.

M.G.L. c. 12, § 11I was enacted to provide a remedy co-extensive with 42 U.S.C. 1983 with the exception of the state action requirement. See *Batchelder v. Allied Stores Corp.,* 393 Mass. 819, 822-823 (1985). Perhaps the most significant difference between claims brought pursuant to M.G.L. c. 12, § 11I and 42 U.S.C. 1983, is the unique requirement, pursuant to c. 12, § 11I, that the civil rights violation occur by way of "threats, intimidation, or coercion." "Threat" has

406490

been held to "involve the intentional exertion of pressure to make another fear or apprehensive of injury or harm." *Planned Parenthood League of Mass., Inc. v. Blake,* 417 Mass. 467, 474 (1994). "Intimidation" has been defined as the creation of fear to compel conduct, and "coercion" to be the active domination of another's will. *Id.*  See also, *Deas v. Dempsey,* 403 Mass. 468 (1988).

There is simply no allegation of threat, intimidation or coercion, as defined hereinabove, so as to allow claims against these defendants to proceed.  Additionally, it is the position that these defendants that the doctrine of *respondeat superior* does not apply to a claim pursuant to M.G.L. c. 12, § 11I and, as such, the claims against them purporting to rest on the doctrine of *respondeat superior* must also fail.  See, *Armstrong v. Lamy,* 938 F. Supp. 1018 (D. Mass. 1996). See also, *Lyons v. National Car Rental Systems, Inc.,* 30 F.3d 240, 247 (1st Cir. 1994).

To the extent that supervisory liability is based upon claims of failure to properly train, discipline or supervise, again, absent specific claims and proof of direct threats, intimidation or coercion by the supervisor, the claim must fail.  See, *Martinez v. Wolferseder,* 997 F. Supp. 192 (D. Mass. 1998) (Police Chief not liable for alleged brutality by police officers absent proof that Police Chief personally engaged in acts amounting to threats, intimidation or coercion); *Hathaway v. Stone,* 687 F. Supp. 708 (D. Mass. 1988) (failure to train, supervise or discipline is not actionable under M.G.L. c. 12, § 11I).

**11.    As To Count IX (Mass. Tort Claims Act c. 258, §2).**

As noted above, the claim asserted under Count IX is essentially incomprehensible.  The law, however, with regard to claims under c. 258 is quite clear.

It is beyond dispute that the claim against a municipality in the Commonwealth alleging personal injury resulting from the negligent or wrongful act or omission of any public employee while acting within the scope of his office or employment, must be brought against the municipality pursuant to M.G.L. c. 258.  Chapter 258, in essence, represents the legislative

406490

abrogation of governmental immunity under certain circumstances.    Absent federal or state legislation to the contrary, c. 258 provides the exclusive mechanism for bringing tort claims. Chapter 258 states, in pertinent part:

> The remedies provided by this chapter shall be exclusive of any other civil action or proceeding by reason of the same subject matter against the public employer or the public employee. its negligent or wrongful act or omission gave rise to such claim, and no such public employee. shall be liable for any injury or loss of property or personal injury or death caused by his negligent or wrongful or omission while acting within the scope of his office or employment.

M.G.L. c. 258, § 2.

At all times material hereto, the defendant officers were acting within the scope of their employment and, in fact, the complaint so alleges.    As such, M.G.L. c. 258, § 2 prohibits the imposition of liability against them in this matter.

In addition to the foregoing, the defendant municipality states that the allegations as contained within the Plaintiff's Complaint fall within the actions excepted pursuant to M.G.L. c. 258, § 10(a), (b), (c), (e) and (f) which state as follows:

(a)    any claim based upon an act or omission of a public employee when such employee is exercising due care in the execution of any statute or any regulation of a public employer, or any municipal ordinance or by-law, whether or not such statute, regulation, ordinance or by-law is valid;

(b)    any claim based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a public employer or public employee, acting within the scope of his office or employment, whether or not the discretion involved is abused;

(c)    any claim arising out of an intentional tort, including assault, battery, false imprisonment, false arrest, intentional mental distress, malicious prosecution, malicious abuse of process, libel, slander, misrepresentation, deceit, invasion of privacy, interference with advantageous relations or interference with contractual relations;

(e)    any claim based upon the issuance, denial, suspension or revocation or failure or refusal to issue, deny, suspend or revoke any permit, license, certificate, approval, order or similar authorization;

406490

16

(f)    any claim based upon the failure to inspect, or an inadequate or negligent inspection, of any property, real or personal, to determine whether the property complies with or violates any law, regulation, ordinance or code, or contains a hazard to health or safety, except as otherwise provided in clause (1) of subparagraph (j).

Because the plaintiff fails to specify the acts which she claims falls within the claim asserted under M.G.L. c. 258, it is relatively impossible for the defendant to specifically articulate case law supporting the applicability of each of the foregoing exceptions to the facts as alleged. The defendants specifically reserves the right to do so, however, to the extent that this Court intends to entertain a claim under c. 258 against the municipality and would further request that the plaintiff be ordered to provide a more definite statement as to the allegations relating thereto after which the defendants would anticipate requesting leave file an additional motion addressing these issues, to the extent that the same is necessary.

**CONCLUSION**

WHEREFORE, based upon on all of the foregoing, the defendants respectfully submit that the Plaintiff's Complaint must be dismissed for failure to state a cause of action cognizable under federal or state law and/or for failure to timely file.

THE DEFENDANTS
TOWN OF EGREMONT, CHARLES
OGDEN, HARRY MEYER AND
DONALD GLEASON


By____*/s/ Nancy Frankel Pelletier*_____
Nancy Frankel Pelletier, Esq., of
Robinson Donovan, P.C.
1500 Main Street, Suite 1600
Springfield, Massachusetts 01115
Phone (413) 732-2301  Fax (413) 785-4658
BBO No.:  544402

406490



MAS-20041213
obrient

**Commonwealth of Massachusetts**
BERKSHIRE SUPERIOR COURT
Case Summary
Civil Docket

## BECV2005-00077
## O'Malley v Town of Egremont et al

| | | | | |
|---|---|---|---|---|
| **File Date** | 03/11/2005 | **Status** | Disposed: transfered to other court (dtrans) | |
| **Status Date** | 07/05/2005 | **Session** | A - Civil A - CtRm 1 | |
| **Origin** | 1 | **Case Type** | E17 - Civil Rights Act (12.011H-1) | |
| **Lead Case** | | **Track** | A | *05 CV 30151-MAP* |

| | | | | | |
|---|---|---|---|---|---|
| **Service** | 06/09/2005 | **Answer** | 08/08/2005 | **Rule12/19/20** | 08/08/2005 |
| **Rule 15** | 06/04/2006 | **Discovery** | 04/30/2007 | **Rule 56** | 06/29/2007 |
| **Final PTC** | 10/27/2007 | **Disposition** | 03/10/2008 | **Jury Trial** | Unknown |

**Plaintiff**
Kathy O'Malley
Active 03/11/2005

**Private Counsel 549850**
David E Ashworth
11 Pleasant Street
Worcester, MA 01609
Phone: 508-753-9199
Fax: 508-831-9639
Active 03/11/2005 Notify

**Defendant**
Town of Egremont
Served: 06/17/2005
Served (answr pending) 06/17/2005

**Defendant**
Harry Meyer, in individual and official capacities
Served: 06/17/2005
Served (answr pending) 06/17/2005

A True Copy
Attest: _Deborah S Capeless_
Clerk

**Defendant**
Donald Gleason, in individual and official capacities
Served: 06/17/2005
Served (answr pending) 06/17/2005

MAS-20041213
obrient

**Commonwealth of Massachusetts**
BERKSHIRE SUPERIOR COURT
Case Summary
Civil Docket

07/06/2005
0:42 AM

## BECV2005-00077
## O'Malley v Town of Egremont et al

**Defendant**
Charles Ogden, in individual and official capacities
Served: 06/17/2005
Served (answr pending) 06/17/2005

| Date | Paper | Text |
|------|-------|------|
| 03/11/2005 | 1.0 | Complaint & civil action cover sheet filed |
| 03/11/2005 | | Origin 1, Type E17, Track A. |
| 06/17/2005 | 2.0 | SERVICE RETURNED: Donald Gleason, in individual and official capacities(Defendant) - in hand, leaving by hand last and usul place o abode, to wit: no 206 Egremont Plain Road, Egremont,Ma |
| 06/17/2005 | 3.0 | SERVICE RETURNED: Harry Meyer, in individual and official capacities(Defendant) - Leaving at front door at 5 Tyrell Road, Egremont, Ma |
| 06/17/2005 | 4.0 | SERVICE RETURNED:  Town of Egremont(Defendant) - Leaving in hand to wit: at 171 Egremont Plaind Road |
| 06/17/2005 | 5.0 | SERVICE RETURNED: Charles Ogden, in individual and official capacities(Defendant) - in hand at 153 Baldwin Hill N/S Egremont, Ma |
| 06/21/2005 | 6.0 | Court received recitation letter regarding service of defendants. |
| 07/05/2005 | | Court received  certified copy of the Notice of Filing of Notice of Removal with the United states District Court from Attorney Nancy Frankel Pelletier |
| 07/05/2005 | | Case REMOVED this date to US District Court of Massachusetts |

case01 203582 y y y y y y