UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

KATHY O'MALLEY,                        )
                    Plaintiff          )
                                       )
                                       )
          v.                           )   Civil Action No. 05-30151-MAP
                                       )
                                       )
TOWN OF EGREMONT, CHARLES              )
OGDEN, HARRY MEYER and                 )
DONALD GLEASON,                        )
                    Defendants         )

REPORT AND RECOMMENDATION WITH REGARD TO
DEFENDANTS' MOTION TO DISMISS (Document No. 5)
March 17, 2006

NEIMAN, C.M.J.

    Kathy O'Malley, a resident of the Town of Egremont, Massachusetts ("the

Town"), brings this civil rights action against the Town, the Chairman of the Town's

Board of Selectmen, Charles Ogden ("Ogden"), the operator of the Town's transfer

station, Harry Meyer ("Meyer"), and Meyer's assistant, Donald Gleason ("Gleason")

(together Defendants").  Defendants' motion to dismiss Plaintiff's complaint has been

referred to this court for a report and recommendation.  *See* 28 U.S.C. § 636(b)(1)(B).

    As described below, the court believes that several of Plaintiff's causes of action

and portions of her other claims are time-barred, *i.e.*, they accrued more than three

years prior to the date she filed her complaint, March 11, 2005.  With regard to those

claims, therefore, as well as with regard to Gleason (who is mentioned only in the time-

barred allegations), the court will recommend that Defendants' motion to dismiss be

allowed.  In all other respects, the court will recommend that Defendants' motion be

denied.

## I. B<small>ACKGROUND</small>

As background, the court first presents Plaintiff's allegations of activities which

occurred prior to March 11, 2002, a date which the parties recognize is key to her

claims.  The court then turns to activities which purportedly took place subsequently.

The court thereafter describes this action's procedural history.

A.  Prior to March 11, 2002

The following allegations of activities prior to March 11, 2002, are taken verbatim

from Plaintiff's complaint:

> 6. [Plaintiff]'s home is located on . . . a private way in the
> Town . . . which is not maintained or plowed by the Town,
> and she sought to commence an initiative petition to see if
> the voters would agree to maintain this road within the town
> budget.
>
> . . . .
>
> 8.  In the great New England tradition, [Plaintiff] commenced
> her political campaign and petitioning activities at the town
> transfer station [(a/k/a the] town dump[)].
>
> . . . .
>
> 10.  On divers dates including March 2nd, 9th and 10th of
> 2002, [Plaintiff] was collecting signatures and otherwise
> reasonably conducting petitioning (political) activities,
> speech, voting rights and peaceable assembly at the Town
> [t]ransfer [s]tation . . . .
>
> 11.  On divers dates including March 2nd, 9th and March 10th,
> 2002, under color of state law, at the suggestion, agreement
> or acquiescence of . . . Ogden, . . . Meyer and . . . Gleason,
> defendants who worked at the transfer station[,] approached

2

[Plaintiff], verbally harassed her and threatened her with serious bodily harm and/or physically intimidated her and coerced her to cease her campaigning or petitioning efforts . . . .

    . . . .

13.  On March 2, 2002, at the . . . [t]ransfer [s]tation, . . . defendants[ engaged in] harassing verbal conduct and threats . . . .

14.  On March 9, 2002, at approximately 1:00 p.m., [Plaintiff] was collecting signatures at the [t]ransfer [s]tation, and as she walked from her car to the landfill she was besieged with loud, angry statements from . . . Gleason and Meyer, who loudly and violently yelled, among other things, "you are not allowed here...get out of here", telling others "don't sign anything."

15.  Sunday morning, March 10, 2002, while [Plaintiff] was at the Egremont [t]ransfer [s]tation, she was confronted with deliberate, loud, angry, hostile, threatening and intimidating statements to leave the premises. . . . Meyer said, "I'll make you leave with this bat", at which time he came from the door way [sic] of the shed/office on the premises toward [Plaintiff], holding a floor lamp over his head in a threatening gesture toward her.

16.  On Sunday March 10, 2002, at the town transfer station, . . . Meyer engaged in assaultive, unreasonably offensive and threatening conduct toward [Plaintiff] to have her immediately leave and cease all political activity, speech and petitioning in this regard.  [Plaintiff] left the premises in fear.  [Plaintiff] and Mary B.[1] heard . . . Ogden tell Meyer and Gleason, "I thought I told you to throw her out of here."

17.  [Plaintiff] verbally complained to the Town on March 2nd, 9th, and 10th, 2002 . . . .

(Complaint ¶¶ 6, 8, 10, 11, 13-17.)

---

[1]  "Mary B." is not elsewhere identified in the complaint.

3

B.  MARCH 11, 2002, AND THEREAFTER

Beginning on March 11, 2002, the following allegedly occurred:

17.  . . . [O]n March 11, 2002, [Plaintiff] filed a formal written complaint with the Board of Selectmen . . ., claiming threatening, intimidating, abusive, egregious and assaultive concerted conduct by certain defendants, which caused her harm and deprived and impeded her ability to exercise her constitutional rights and lawfully obtain signatures for her initiative petition.

18.  On March 14, 2002, a fact finding hearing before the Board of Selectmen was held inquiring into the incident[.] . . . Meyer attended and wrongfully denied his, and other defendants' conduct, thereby continuing defendants' unconstitutional conduct, failure to supervise and failure to investigate and afford [Plaintiff] adequate due process, and . . . Meyer left this meeting before it was concluded.

19.  On or about March 15, 2002, [Plaintiff] attended a Board of Selectman's meeting asking for a continuance of the statutory signature gathering deadline given the fact she was prevented by public officials from lawfully collecting signatures[.]  [S]he further asked for police protection and to investigate all defendants' conduct, and if the allegations were supported, to at a minimum, terminate . . . Meyer's employment; defendants continued to deny their unlawful conduct and further deprived [Plaintiff] of her constitutional rights.

20.  On March 15, 2002, Egremont Police Department Chief Buckness attended the meeting and made available the report of Officer William Mooney, about the incident otherwise reported by [Plaintiff] that occurred on March 10, 2002, at about 13:15 hours.

21.  On March 26, 2002, Great Barrington District Court, Criminal Division held a Clerk Magistrate Show Cause hearing where the case was continued for nine months to December 24, 2002.

22.  On or about April 18, 2002, . . . Ogden wrote a letter to [Plaintiff] stating that "appropriate action to rectify the

4

situation...was already taken", but no information on what action was taken was provided to [Plaintiff] after her inquiry, . . . .

23.  The April 18, 2002, letter inaccurately referred only to . . . Gleason's behavior and not . . . Meyer or Ogden's conduct, regarding behavior toward [Plaintiff] at the [t]ransfer [s]tation. . . . Meyer was the person who threatened [Plaintiff] with a floor lamp, however this specific issue has never been reasonably or adequately addressed with respect to her claims.

                . . . .

25.  In a seemingly related matter, on or about June 19, 2003, [Plaintiff] was issued a written notice of violation of an Egremont Zoning By-law, 5.12, which under the objective facts and circumstances constitutes retaliatory conduct against [Plaintiff] for the exercise of her constitutional rights to speak, petition, vote, peaceably assemble, and to participate in government.

26.  On July 31, 2003, [Plaintiff] wrote to the Town['s] . . . Building Inspector, Mr. Race, concerning allegations that her shed was in violation of a zoning by-law, stating that she is being treated unfairly, and singled out, and that many other people in town, including abutters, have sheds that would be in violation of the same by-law, and specifically requested that this matter be handled in conjunction with the allegation of a zoning by-law violation against her.

27.  [Plaintiff] responded and has given notice to the Town of persons and abutters' zoning violations which encroach on her property and while action on her alleged violation has moved forward against [Plaintiff], no response, action or corrective remedy has taken place viz a viz complaints by [Plaintiff] against abutters and other similarly situated residents of the [T]own.

(Complaint ¶¶ 17-23, 25-27.)

C.  PROCEDURAL HISTORY

       Plaintiff filed this nine-count action in the Berkshire Superior Court on March 11,

5

2005.  Counts I through IV allege violations of Plaintiff's rights under Article IX of the Massachusetts Declaration of Rights (Count I), the Massachusetts Civil Rights Act, Mass. Gen. L. ch. 12, §§ 11I and 11H (Count II), Article XLVIII of the Massachusetts Declaration of Rights (Count III) and the due process clause of the Fourteenth Amendment to the Constitution (Count IV).  Count V alleges that Meyer is liable for civil assault.  Plaintiff next alleges violations of 42 U.S.C. § 1983 (Count VI) and the First Amendment to the Constitution (Count VII).  Count VIII is entitled "Defendants' Supervisory Liability."  And Count IX alleges a violation of the Massachusetts Tort Claims Act, Mass. Gen. L. ch. 258, § 2.

In due course, Defendants removed the action to this forum and filed the instant motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6).  Defendants' motion makes two arguments: a statute of limitations argument and a merits argument.  Plaintiff thereafter filed an opposition to Defendants' motion, to which he appended an affidavit of counsel, and the court heard oral argument.

## II.  STANDARD OF REVIEW

A Rule 12(b)(6) motion should be granted when a review of the complaint shows that a plaintiff can prove no set of facts in support of the claims that would entitle her to relief.  *See* Fed. R. Civ. P. 12(b)(6); *Wagner v. Devine*, 122 F.3d 53, 55 (1st Cir. 1997). *See also Alternative Sys. Concepts, Inc. v. Synopsys, Inc.*, 374 F.3d 23, 29 (1st Cir. 2004) (complaint may be dismissed pursuant to Rule 12(b)(6) "if no well-pleaded set of facts supports recovery") (citing, *inter alia, Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).  "[A] court asked to dismiss a complaint on statute of limitations grounds may

examine not only the complaint but also such other documents as may appropriately be considered under Fed. R. Civ. P. 12(b)(6)." *Rodi v. S. New Eng. Sch. of Law*, 389 F.3d 5, 18 (1st Cir. 2004). Here, the parties agree that the court can look both to Defendants' exhibit (the Berkshire Superior Court docket sheet) as well as the affidavit of Plaintiff's counsel without converting Defendants' motion into one for summary judgment. *See* Fed. R. Civ .P. 12(b) (last sentence).

### III. DISCUSSION

The court will address each of Defendants' two argument in turn. In the end, the court finds Defendants' statute of limitations argument meritorious and will recommend that the motion be allowed insofar as Plaintiff's claims are premised on conduct which occurred prior to March 11, 2002. As a result, the court will recommend that Defendants' motion to dismiss be allowed with respect to Counts I, V and VI, so much of Counts II through IV and VII through IX as are premised on the events of March 2, 9 and 10, 2002, and all counts insofar as they target Gleason. In all other respects, the court will recommend that Defendants' motion be denied.

### A. STATUTE OF LIMITATIONS

The parties agree that all of Plaintiff's claims are governed by the limitations period specified in Mass. Gen. L. ch. 260, § 2A. That statute requires Plaintiff's complaint to have been filed "within three years next after" her causes of action accrued. The parties also agree that Plaintiff's complaint was not filed until March 11, 2005. Accordingly, any claim which accrued prior to March 11, 2002, is time-barred. *See also Poy v. Boutselis*, 352 F.3d 479, 483-85 (1st Cir. 2003) (confirming that, under

7

both federal and Massachusetts rules, the last day for filing civil rights actions is the

third "anniversary date of the event").  On its face, therefore, the complaint appears to

be untimely with regard to the events at the transfer station which, as indicated,

occurred on March 2, 9 and 10 of 2002.

Plaintiff makes two arguments as to why she believes the action is timely with

respect to each and every aspect of her complaint:  first, the application of a "weather

exception" contained in Fed. R. Civ. P. 6(a) and, second, "excusable neglect."  Plaintiff

also asserts that the statute of limitations question should be presented to a jury as an

issue of fact.  The court finds all of Plaintiff's arguments unpersuasive.

1. <u>Weather Exception</u>

First, Plaintiff asserts that "extreme weather conditions" prevented her from filing

her complaint on March 10, 2005, the last day of the limitations period for the events

occurring on or before March 10, 2002.  Plaintiff's counsel avows in an affidavit that he

left his Worcester office on March 10th "at approximately 1:45 p.m." and arrived at the

Berkshire Superior Court in Pittsfield "at approximately 5:10 p.m."  (Ashworth Affidavit

(Document No. 9) ¶ 2.)  The delay of "approximately one and one half hours"

(assumedly the extra driving time), the affidavit continues, was "due to extreme weather

conditions (rain, a heavy downpour, poor visibility) on Route 290 West, the

Massachusetts Turnpike West, and 7 North to Pittsfield."  (*Id.*)  The affidavit states that

counsel "was forced to exit the Massachusetts Turnpike at Exit 10 due to weather

conditions and weather caused traffic, which rendered the Clerk's Office inaccessible

by 5:00 p.m., under the circumstances."  (*Id.* ¶ 3.)  The affidavit does not assert, nor

8

could it assert, that the clerk's office had to close early (or was not open at all) because of the inclement weather.  Rather, the affidavit states that "[w]hen counsel finally arrived at 5:10 p.m., the Courthouse doors were locked and upon inquiry [counsel] determined that the Clerk's Office had closed for the day."  (*Id.* ¶ 4.)  The next day, *i.e.*, March 11, 2005, "counsel arrived at [the] Clerk's Office at 8:30 a.m. . . . and filed the complaint, paid the appropriate filing fees and had summons issued to each defendant."  (*Id.* ¶ 5.)

According to Plaintiff, Fed. R. Civ. P. 6(a) provided her an extra day to file.  That provision states that "[t]he last day of [a] time period to be computed shall be included, unless it is a Saturday, a Sunday, or a legal holiday, or *when the act to be done is the filing of a paper in court, a day on which weather or other conditions have made the office of the clerk of the district court inaccessible*, in which event the period runs until the end of the next day which is not one of the aforementioned days."  Fed. R. Civ. P. 6(a) (emphasis added).

Unfortunately for her cause, the court finds several problems with Plaintiff's reliance on the federal rules' so-called "weather exception."  *See generally* William G. Phelps, *When is Office of Clerk of Court Inaccessible due to Weather or Other Conditions for Purpose of Computing Time Period for Filing Papers Under Rule 6(a) of Federal Rules of Civil Procedure*, 135 A.L.R. Fed. 259 (West 2006).  First, Plaintiff makes no argument how the federal weather exception might save any claims premised on the events of March 2 and 9, 2002.  Those would appear to be time-barred since they arose more than three years prior to the day Plaintiff tried to file -- let alone

9

actually filed -- her complaint.  Second, even were the court to treat the events in early

March as tied together for purposes of the statute of limitations, the fact is that Plaintiff

filed this action in state court and that Massachusetts' civil rules do not contain a

weather exception.  *See* Mass. Civ. P. 6(a).

Third and more fundamentally, the case law construing the weather exception

contained in Fed. R. Civ. P. 6(a) -- or its bankruptcy analogue, Fed. R. Bankr. P.

9006(a) -- does not support Plaintiff's argument.  In virtually every decision which this

court has found expounding on the subject (Plaintiff cited none), the clerk's office itself

had to be physically closed due to weather in order for it to be deemed "inaccessible."

*See, e.g.*, *Telephone & Data Sys. v. Amcell F Atl. City*, 20 F.3d 501, 501-02 (D.C. Cir.

1994) (courthouse closed due to inclement weather); *In re Richards*, 148 B.R. 548,

549-50 (Bankr. N.D. Ill. 1993) (clerk's office closed due to flooding).  *See also Hotel

Syracuse, Inc. v. Syracuse Indus. Dev. Agency*, 154 B.R. 13, 18 (Bankr. N.D.N.Y. 1993)

("In cases where the courts have chosen to extend a filing deadline because of

inclement weather, they have done so only when weather has caused the clerk's office

to close."); *In re Bicoastal Corp.*, 136 B.R. 288, 289 (Bankr. M.D. Fla. 1990) (inclement

weather in another part of country which caused delay in delivery of documents to be

filed did not make clerk's office, which was open, inaccessible).

The only notable exception to this prerequisite is found in *United States Leather

v. H&W Partnership*, 60 F.3d 222 (5th Cir. 1995).  There, even though the clerk's office

may have technically been open, an ice storm knocked out the area's power and

telephone service, travel to the courthouse was dangerous, difficult, or impossible, the

plaintiff's attorney was located in a Federal Disaster Area, and the attorney was physically unable to leave his home due to felled trees and power lines. *See id.* at 226 (holding that such facts were sufficient to invoke the weather exception). No such extenuating facts are alleged here. More importantly, however, *United States Leather* involved a run-of-the mill post-trial motion governed by the court's own rules, not a pleading subject to a limitations period specifically defined by a state legislature. *Id.* at 225. That is the case here and, as explained below, courts have been quite reluctant to use the civil procedure rules to extend legislatively-established statutes of limitation. *See also* Fed. R. Civ. P. 6(a) (limiting weather exception to acts involving "the filing of a *paper* in court") (emphasis added); Fed. R. Civ. P. 7 (distinguishing between "pleadings" such as a complaint and "motions and other papers").

2. Excusable Neglect

Second, Plaintiff asks the court to "consider her opposition to [D]efendants' motion to dismiss, a motion under the standards of Fed. R. Civ. P. Rule [sic] 6(b)(2), to extend the time, after the expiration of the specified period, to permit the act to be done where the failure to act was a result of excusable neglect." (Plaintiff's Opposition (Document no. 8) at [3].[2]) Of course, the court cannot simply turn a phrase in Plaintiff's Brief into a properly-filed motion. *See* United States District Court Local Rule 7.1 (describing court's detailed motion practice procedures). In any event, the court believes Plaintiff's excusable neglect argument lacks merit.

---

[2] As Plaintiff's Opposition contains no page numbers, they have been added by the court.

11

It is well established that "Rule 6(b) governs the enlargement of time periods prescribed by the federal rules or by an order of the district court."  4B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure 3d* § 1165 (2005) (citing cases).  Unfortunately for Plaintiff, "[t]he rule does not apply to time periods set out in statutes."  *Id.  Accord Parker v. Marcotte*, 975 F. Supp. 1266, 1269 (C.D. Cal. 1997), *rev'd on other grounds*, 198 F.3d 254 (9th Cir. 1999); *Village Improvement Ass'n v. Dow Chem Co.*, 655 F. Supp. 311, 315 (E.D. Pa. 1987).  *See also* 1 James Wm. Moore, *et al.*, *Moore's Federal Practice* § 6.06(1)(a) (3d ed. 1997) ("In other words, federal courts may not use Rule 6(b) to enlarge time periods established by statutes.").  Accordingly, the court "may not utilize Rule 6(b) to extend the statute of limitations."  *Parker*, 975 F. Supp. at 1269.  *Accord Hammons v. Int'l Playtex, Inc.*, 676 F. Supp. 1114, 1118 (D. Wyo. 1988), *vacated on other grounds*, 872 F.2d 963 (10th Cir. 1989).

Even if Rule 6(b) might apply, the court believes the instant situation is not one where counsel's neglect ought to be excused.  *See generally Dimmitt v. Ockenfels*, 407 F.3d 21, 23-25 (1st Cir. 2005) (describing circuit's excusable neglect standards).  For example, the court has not been told if Plaintiff or her counsel viewed a weather or traffic report, called the court, or took any other type of preemptive action.  There is also no indication, as is sometimes the case, that counsel received the case from his client at the very end of the limitations period.  Rather, as counsel confirmed at oral argument, he had the information about the case and the looming expiration of the statute of limitations for over a year.  (See Complaint ¶ 30 (indicating that Plaintiff made a legal demand on Defendants pursuant to Mass. Gen. L. ch. 258, § 4 on *January 28,*

12

*2004*).)  Indeed, counsel also mentioned at oral argument that a good part of the problem was related to a delay in his receiving his retainer.  Given these facts, the court finds that counsel's waiting until essentially the last day to file suit is, in a word, *in*excusable.

### 3. Jury Argument

Finally, Plaintiff contends that "any disputed issues relative to the statute of limitations ought to be decided by the jury."  (Plaintiff's Opposition at [4].)  The only case Plaintiff cites for that proposition, however, involved the question of when the plaintiff knew or should have known that his cause of action existed.  *See Riley v. Presnell*, 565 N.E.2d 780, 786-87 (Mass. 1991).  That is clearly not the situation here.

### 4. Application of Three Year Limitations Period

In summary, this court believes that the three year limitation period bars those of Plaintiff's claims which are premised on the events of March 2, 9 or 10, 2002. Accordingly, the court will recommend that Defendants' motion to dismiss be allowed with respect to Counts I, V and VI, so much of Counts II through IV and VII through IX as are premised on the events of March 2, 9 and 10, 2002, and all counts insofar as they target Gleason, who is mentioned in no other time period.

## B.  MERITS

As to the merits, Defendants assert that the remaining causes of action fail to state claims upon which relief may be granted.  On this score, and considering the nascency of this action, the court believes that the best course of action is to allow the remaining claims to survive.  There is no heightened pleading requirement for civil

rights claims.  *Torres-Rivera v. O'Neill-Cancel*, 406 F.3d 43, 49 (1st Cir. 2005) (citing,

*inter alia*, *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507

U.S. 163, 168 (1993)).  And while several of the remaining claims appear to include

some of the time-barred allegations, they are also stated more broadly.  In particular,

Count IV refers to Plaintiff's "due process" rights and appears to relate to the Town's

actions on March 14 and 15, 2002, and in April of 2002.  Similarly, the court believes

that Counts II, III, VII, VIII and IX can be read to apply, at least in part, to events

occurring after March 10, 2002.

## IV. CONCLUSION

For the foregoing reasons, the court recommends that Defendants' motion to

dismiss be ALLOWED as to Counts I, V and VI, so much of Counts II through IV and VII

through IX as are premised on the events of March 2, 9 and 10, 2002, and all counts

insofar as they target Gleason.  In all other respects, the court recommends that the

motion be DENIED.[3]

---

[3]  The parties are advised that under the provisions of Rule 3(b) of the Rules for
United States Magistrates in the United States District Court for the District of
Massachusetts, any party who objects to these findings and recommendations must file
a written objection with the Clerk of this Court **within ten (10) days** of the party's
receipt of this Report and Recommendation.  The written objection must specifically
identify the portion of the proposed findings or recommendations to which objection is
made and the basis for such objection.  The parties are further advised that failure to
comply with this rule shall preclude further appellate review by the Court of Appeals of
the District Court order entered pursuant to this Report and Recommendation.  *See
Keating v. Secretary of Health & Human Services*, 848 F.2d 271, 275 (1st Cir. 1988);
*United States v. Valencia-Copete*, 792 F.2d 4, 6 (1st Cir. 1986); *Scott v. Schweiker*, 702
F.2d 13, 14 (1st Cir. 1983); *United States v. Vega*, 678 F.2d 376, 378-379 (1st Cir.
1982); *Park Motor Mart, Inc. v. Ford Motor Co.*, 616 F.2d 603, 604 (1st Cir. 1980).  *See
also Thomas v. Arn*, 474 U.S. 140, 154-55 (1985).  A party may respond to another
party's objections within ten (10) days after being served with a copy thereof.

DATED: March 17, 2006

                                      /s/ Kenneth P. Neiman
                                      KENNETH P. NEIMAN
                                      Chief Magistrate Judge